Please be seated. Good morning everyone. Welcome to the Ninth Circuit. Thanks for venturing out on this very smoky morning. Judge Schroeder and I would like to once again thank our dear colleague Judge Corman for visiting with us from the Eastern District of New York, especially given the weather or atmospheric conditions. I didn't know when I accepted the invitation. Well, it's hard to tell where it's worse. But we are very grateful for your willingness to come out and assist us. All right, we will hear the cases in the order that they appear on the calendar and first up is United States v. Davis. So, counsel for the opponents, ready? Let's get ready. Let's get started. Thank you, Your Honors. My name is Kevin Stolworthy and it's a pleasure for me to be here today. I represent Tyrone Davis. The Court did notify us of the Edling decision and obviously Mr. Davis does support that decision. The Court, I note that in Edling that the Court followed the categorical approach in both looking at the Elements Clause and the Enumerated Offenses Clause. Mr. Davis would agree that the, with regard to the Elements Clause, that Nevada robbery statute does sweep more broadly. It includes fear of injury to property. We would also agree that with regard to the robbery in the Enumerated Offense Clause, that it does refer to generic robbery and it requires danger to person and not to property. And then we get to the issue of the extortion definition in the Enumerated Cause Clause. And we see that the sentencing guidelines did apply a new definition of extortion. That enumerated definition of extortion does not apply towards threats against property. So we would agree with that and ask the Court to follow the reasoning in the Edling decision. And the rule of lenity, I think, is very, very appropriate for this case. And with regard to being a career offender, one of the base convictions is the robbery that Edling talks about, but it's also the base conviction with regard to possession of a half an ounce of marijuana that was a misdemeanor that turned into felony because he didn't do his probation and now he's facing almost a life sentence. So we believe that the Edling decision would apply to two things. It would apply to the career offender issue, and it would also apply to 2K2.1, the base offense level. We think it would have impact on both of those issues if he was resentenced. The other issue that concerns me is on our motion, his motion to suppress, if I could go to that. And it's the metadata that was on the photos. It's an issue with regard to the Fourth Amendment, whether or not there was a legal search. And obviously, Detective Sazer was canvassed by the magistrate at the hearing. But there's a couple of things that are just really important here that I would just like to alert to the Court. And that is no one, including Detective Sazer, ever checked the camera to see if what to provide corroborating evidence, to see if what was true, that really that the daylight savings time was what was said on that camera. There was nobody who corroborated that, even looked at it. He didn't even know if it was the wrong date due to the daylight savings time. He just basically said, I think it was the right date, because I wouldn't do that. Can I ask you a question? I think that maybe they did go in first, although the judge chose to credit the testimony of the police officer saying, I would never do it. Exactly. But suppose you're right about that. How do you — there's a case called Murray against the United States, a Supreme Court case, which suggests that even if they went in first and then got the warrant, if they didn't rely on anything they found in order to get the warrant, then it doesn't matter that they went in first. At least that's the way I read that case. I know it's not cited by the parties, but it's there. To get the second warrant, which was to actually go in and get the guns and the other things, was based on the first warrant. Yes, but the first warrant, they had a warrant because there was a robbery, and the warrant was to search for the fruits of the robbery. And while they — and so while they were searching for the fruits of the robbery, they found all this other stuff dealing with the fact that he was — notwithstanding his disclaimers, you know, they found scales and baggies and all that indicating that he was selling drugs. And so they call up the magistrate and they say, well, we went in with the first warrant, but then we found all this other stuff that we were not authorized to seize, and we want a warrant for that. And of course, it's even debatable whether they needed that second warrant. Because of the plain view, except — Yeah. Yeah. Well, it's a good question, Your Honor. And it appears to me that — and I haven't read the case that you've referenced. It was, as you said, it wasn't in the brief. It's at 487 U.S. 533, if you want to read it after the argument. Okay. In fact, you could say I may have read it wrong. Well, I'm sure you don't want me emailing you after the argument. It's okay. If I haven't stated it correctly, I was sort of with you all the way. And then we did some more legal research on this, and we found this case that said it made no difference. And it made no difference because of no prejudice? Or what was the actual issue? It said that it's a kind of an independent source doctrine case. Okay. Well, and the independent source would be the first warrant? Exactly. Right. The only exception to the rule in Murray is if you could show that the officers would not have gone and gotten the warrant anyway but for what they saw. And I don't think that's the case here. Well, what if they went in — what if the metadata is correct and they went in before they were supposed to on the first warrant? They shouldn't have done it. In fact, the guy — the guy who — the guy, the police officer who the magistrate, I guess, believed said it would have been illegal, and that's why he would have never done it. Exactly. Doesn't that invalidate the first — the first warrant as well? No, because it's not his opinion about — it may have been illegal, but the question is what the — not every violation of the Fourth Amendment gets suppression. That's the — Exactly. That's the bottom line. Right. Yeah. You know, I — I guess my answer would be is that they went in under the first warrant illegally, under the Fourth Amendment, and I just don't see how an exception would apply in good faith if you weigh all the factors. I think if you look at the testimony and the fact that they never got the phone, he said — or the camera, he says, I don't know. He doesn't know what happened. Look, I — I don't have a good feeling about what they did here. Right. There's some — I have this sense that there's something about what went on here that I don't know. I think the police in the city, to expend the effort that they described over somebody stealing a pocketbook, I don't think that would ever happen in New York. Right. No, I understand. I think they were — they probably suspected him all along of dealing drugs, and that's why they were putting so much effort into this. You know, it's not a petty crime if you're — you get my gist. I understand. But I don't — and then there's still the problem of the judge believing the police officer that it's — I would never do such a thing. I — when she says — I believe him. It's — it would have been a close case if it matters. Right. Well, and then you've got, you know, her deference to her on the clear air standard on factual issues. But I understand. I just — I just think that if you look at the totality of the circumstances and the standards that we have, that it just doesn't pass the test. Let me ask you a question that just sort of occurred to me. Why did he plead? Well, that's a good question. I wasn't — Why did — he got nothing for pleading. He wanted to preserve his — The opposite, because pleading without an agreement waives your right to an appeal. If he wanted to preserve his right to appeal, he should have continued to go to trial. In fact, I credit the prosecutor by saying, we're not going to stand on the fact that he pled guilty to deny him his right to reserve the issue. Right. But I don't know. And we did get a — I'm scratching my head, and he turns down fairly favorable — He wanted — Given what he was potentially looking at. Right. He wanted to preserve his rights to appeal. And as you mentioned, he could have gone to trial and done the same thing. But he did just — what he did was just the opposite. Right. In other words, pleading guilty without an agreement, you waive your right to appeal. Right. But we did get a letter from the prosecutors that they — or that they provided to him that he would preserve his rights for appeal. And then on that note, Your Honor, he does want to withdraw his guilty plea because he possession of firearm and furtherance of the drug trafficking crime. If you look, there's the fair and just reason standard. But if you look at the facts of this, you know, he — and you look at the Hector decision, and we don't believe the Hector decision applies because his gun was under his pillow. And he said all along that, you know, he only did $100 worth of cocaine, and I don't need a gun for no drugs. But they found a scale in baggies, among other things, in the room. I mean, where do you need a — let's assume that — I don't know whether $100 worth of — Right. I'm not an expert in this — For count three. — in knowing whether it's a lot of drugs or not. But they find a scale in baggies. He's basically — whatever he may have had in there at that moment doesn't mean he wasn't engaged in possession of the gun to further his drug business. Well, he — you know, if you look at the gun aspect of it, the gun was not in a direct path where he was — he wasn't even completing a cell. He was just smoking with his friends. And the gun was under his pillow. It wasn't really following what the Hector decision said with regard to that. I see I have 30 seconds. No, you are over your time, but we'll give you a minute for rebuttal. The clock keeps going up, so you're over your time. Oh, I'm sorry. I'm in the red. We'll give you a minute for rebuttal, though. Thank you very much. Thank you. Let's hear from counsel for the government. May it please the Court, Bill Reed for the United States. Mr. Davis did not decide to plead guilty in this case. When you start with the Edlin issue, do you agree that we need to remand on that? If Your Honor is — if the Court is not willing to find on this record that this constituted generic robbery under one of the enumerated offenses — What do you mean if we're not willing to? I'm just asking that we have a decision that seems to address the same statute, no? It does address the same statute. So how do we then have discretion to come out differently? That's what I'm just — do you have an argument as to that, or is it just — does it control? Edlin certainly controls as to the extortion component of the Nevada robbery statute. There's certainly no — that's non-debatable. The Court has found that. However, the issue before this Court is Nevada's robbery with use of a deadly weapon. And my argument, if the — my second argument would be ask the Court to remand for further findings, if you don't accept my first argument, that the robbery with use of a deadly weapon wasn't considered by the Court in Edlin, and it takes the robbery, this robbery, this particular robbery offense into a different context than just — We held — we — I'm not used to — No, we — We held, and we actually held that the California robbery statute was not a crime of violence because it involved — it didn't fall within the categorical definition that we adopted because it involved a threat to property. And the — as I read the Nevada robbery statute, it's a mirror image of the California statute, and, therefore, it's not robbery and it's not extortion. Thank you, Your Honor. As I understood, the Court's decision that goes back to, I believe, Becerra-Lopez, the California robbery statute, which I believe is almost a mirror image of the Nevada — it was extortion, and, therefore, it was a crime of violence. But then the Sentencing Commission adopts a definition of extortion, which is identical in many respects to the robbery one. So it — I don't see how you could prevail here. As I understood from Becerra-Lopez and its progeny, the Court held that if it was not robbery, it was generic extortion. Right. But that was before the guidelines were amended in 2016 to give a definition of generic extortion. And under that generic extortion, the Nevada statute cannot constitute a crime of violence. That's — I believe that's — I could — There's not only Judge Watford's opinion in Edling, but there was a subsequent one which basically said that. I agree with Your Honor's assessment that the Nevada robbery statute, its incorporation of extortion exceeds the definition of extortion under the guidelines now. But this Court, I don't believe, has ever held specifically that the counterpart, the actual robbery component of the Nevada robbery statute, as an enumerated offense, is broader than generic robbery under the Federal definition. I don't want to spend all your time on this, but in the Becerra-Lopez case, we held that the California robbery statute did not meet the categorical definition that we had be extortion. But it can't be extortion now. So I don't know why — the judge gave less than the guidelines, by the way, for a career offender, but he might have — his mistake might have affected what sentence he gave. The theory about getting the guidelines right is that under the statute, one of the factors you have to take into account, although you're not bound by it, is the guidelines. Well, you can't take the guidelines into account if you've miscalculated them. I agree, Your Honor. There's no dispute from the government as to that. I just — as I — and I may have misunderstood it, but I understood the Court in Becerra-Lopez — I mispronounced it earlier — held that the California robbery statute, which the generic robbery or generic extortion, extortion is out under the Nevada statute based upon Edling. But unless I've misapprehended the Court's opinion, I'm not aware of an opinion where the Court has held that robbery, per se, under the generic definition, the Federal definition, is out in this case. And I would submit that there's strong evidence and argument that this was generic robbery because there was use of a deadly weapon as an element to this offense. So is the — is robbery with a deadly weapon, is that a — it's a separate offense from the 200.380 offense? Your Honor, I believe that that, under Nevada law, is an enhanced punishment. But I believe in order to apply that enhanced punishment, it — there has to be — it is an element of that offense in order to apply that. Is it under a different statute than the 200.380? Because I'm looking at that statute, and it doesn't say anything about use of a deadly weapon. That's why I'm — I believe it is the use of a deadly weapon enhancement component. Yes, Your Honor. It incorporates the —   The statutory definition of robbery. That's my understanding, Your Honor. So if that definition is too broad, then the robbery — then the enhanced would be, too, wouldn't it? That's correct, Your Honor. I would concede that. But I would just — I would submit that this is — this Court has always treated offenses involving uses of a deadly weapon differently. And in this case — I see. Here we have a deadly weapon. And that this is not extortion. It can't — extortion can't constitute — can't be a crime of violence under this Court's definition or under the guideline definition in Edling. But here we have robbery with use of a deadly weapon. And robbery is still an enumerated offense with — Okay. Unless there are any other questions about that, as I was saying, Mr. Davis didn't plead guilty in this case on a whim. After four years and four attorneys, on the first day of his trial, he made a conscious, deliberate decision to plead guilty after a jury was chosen in this case. The record shows that Mr. Edling was not someone who was susceptible to influence or domination by authority, including the district court or his counsel or anyone else, for that matter. He clearly, based upon the record in this case, knew what all his options were. In this case, Mr. Edling is — Your Honor, Judge Corman has alluded to Mr. Davis — I may have said Edling. I apologize. Mr. Davis insisted upon preserving his right to appeal both of his motions to suppress evidence, which I would submit is a hallmark of an individual's conscious, deliberate decision to enter a guilty plea. Mr. Davis, for whatever reason, insisted upon pleading guilty to — with respect to the 924C Count III. He wanted to plead to the language in a vacuum in the indictment. But for whatever reason, he had some hesitation. I would submit the record shows — He had it in his mind, at least, as he kept saying, that he can't be — that he had the gun for his own personal protection and not unrelated to the drug business. But the factual basis for the plea normally does not have to come through his lips. It could come through other evidence. And there's clearly evidence here that he was possessing the gun pursuant to — I don't know why I'm making your argument, but I should say. Exactly, Your Honor. I see my time is about to elapse. But exactly. In this case, the district court was in a tough position here. It had to respect Mr. Edling's right, constitutional right, to trial. But it also had to — it couldn't force him to trial and had to respect his insistence upon pleading guilty. Here the district court had, as a factual basis, not only the very specific language of count three, but by the time accepted the guilty plea formally, the PSR, all the evidence that was found in the apartment, his own words to detectives that he was selling drugs from his apartment. I see I'm out of time. Unless there are any additional questions, I'll submit it to the court. Okay. Thank you, counsel. Thank you, Your Honor. Let's put a minute on the clock if counsel for the defendant has some concluding remarks. Just briefly on that last point, and I understand the Court's comments, but, you know, he kept not wanting to agree that he used a gun with regard to count three when he was pleading guilty to that count. And finally, in exasperation, the U.S. attorney, assistant U.S. attorney, just basically read the indictment. And in his mind, that wasn't what he was pleading to. And I understand that you can look at the other facts and look at that, but simply reading an indictment out of, you know, exasperation because he won't admit it just doesn't seem like it cut it in his mind. With regard to the Edling decision, again, we support that decision. The rule of lenity should apply also. The separation of powers concern allows that to happen, notwithstanding the Beckless decision. And thank you very much. Okay. Thank you, counsel. The case just started. It is submitted.
judges: Schroeder, Watford, Korman